## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Scott Shawn Kosterow

     v.                           Civil No. 17-cv-357-JL

Hillsborough County Department
of Corrections et al.[1]

### REPORT AND RECOMMENDATION

Before the court is the (amended) complaint (Doc. No. 8) (hereinafter "Complaint"),[2] filed by Scott Shawn Kosterow, a pretrial detainee at the Hillsborough County Department of Corrections ("HCDOC"). The Complaint asserts claims of violations of Kosterow's federal rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); Title II of the Americans with Disabilities Act ("ADA"); and the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. The matter is before the court for preliminary review. See 28 U.S.C.

---

[1]The court has construed the initial pleadings in this action as intending to state claims against defendants identified in this Report and Recommendation as Hillsborough County and the following Hillsborough County Department of Corrections ("HCDOC") personnel: "Unknown Nurse #1," "Unknown Nurse #2," "Unknown Medical Provider #1," Capt. Levierge (whose first name is unknown), HCDOC Capt. W. Scurry, Health Services Administrator Denise Hartley, and Superintendent David Dionne.

[2]Document No. 8 was docketed as a motion to amend/supplement the complaint in this action. The Order issued this date has granted that motion (Doc. No. 8), in pertinent part. Document No. 8 is thus the operative complaint in this case, subject to this court's preliminary review of the initial pleadings.

§ 1915A; 28 U.S.C. § 1915(e)(2); and LR 4.3(d)(1).

## Preliminary Review Standard

The court conducts a preliminary review of inmate complaints.  See 28 U.S.C. §§ 1915(e)(2), 1915A(a); LR 4.3(d)(1).  Claims may be dismissed if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  See 28 U.S.C. §§ 1915(e)(2), 1915A(b); LR 4.3(d)(1)(A).  In conducting its preliminary review, the court construes pro se complaints liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## Background

Kosterow has been an inmate in pretrial detention at the HCDOC since April 22, 2017.  Kosterow alleges that he practices a religion he calls "Hindi."[3]  Kosterow alleges that when he

---

[3]This court expresses no opinion as to whether plaintiff, in using the word, Hindi, which generally refers to a language of India, Hindi, intending to refer to Hinduism, or to another religion.

declared he was "Hindi" to the officer who booked him on April 22, 2017, and that officer laughed and did not record "Hindi" as Kosterow's religion.

Kosterow states that his religion requires him to adhere to a vegan diet. Although Kosterow filed a number of health requests and inmate requests in April/May 2017, all requesting a vegan diet, Kosterow continued to be served non-vegan meals. On May 9, 2017, Kosterow spoke with Capt. Levierge and notified him that he was requesting a vegan diet because of his religion. Levierge advised Kosterow to submit a new inmate request slip declaring his religion to be "Hindu" and asking for a vegan religious diet. On May 9, 2017, Kosterow submitted an inmate request slip, requesting a vegan diet for religious purposes, and on May 12, 2017, Kosterow filed a grievance making the same request. Capt. Scurry notified Kosterow on May 15, 2017 that Kosterow would receive religious meals that meet "Hindu" requirements. Kosterow alleges he fasted for twenty-nine days at HCDOC, until he began to receive vegan meals on May 20, 2017.

Kosterow further asserts that he requested access to a religious text he calls the "Pavitra Bible." The HCDOC notified Kosterow that all religious materials are donated to the HCDOC, and that Kosterow could ask an outside source to purchase and mail a Pavitra Bible to him at the HCDOC, which the HCDOC would deliver to him, subject to HCDOC security requirements. Doc.

3

No. 8, at 38.

Kosterow asserts that his religious practices include yoga.
His request for a yoga mat was denied by Capt. Scurry.  In
response to a pair of August 1, 2017 grievances, Capt. Scurry
notified Kosterow that HCDOC medical providers had placed
restrictions on Kosterow's ability to practice yoga because of
his seizure disorder, and that modifications to those
restrictions were the responsibility of Kosterow's health care
providers.  Scurry further explained that Health Services
Administrator ("HSA") Denise Hartley and the HCDOC
Superintendent David Dionne had met with Kosterow and Scurry on
August 16, 2017, and it was decided in that meeting that
Kosterow could practice yoga in the recreation yard and in his
cell.  See Doc. No. 8, at 46-47.  Superintendent Dionne denied
the grievance of that issue.  Id.

The Complaint states that Kosterow suffered a seizure on
April 22, 2017, while in the custody of the Manchester Police
Department, and that he suffered a second seizure at the HCDOC
two days later.  See Doc. No. 8, at 2, 4.  In response to a
September 13, 2017 grievance in which Kosterow asked generally
why inmates with seizure disorders are subject to limits on
their ability to exercise and work, Hartley stated that the
restrictions on Kosterow were intended to safeguard his health
and well-being, and that, after he is seizure-free for at least

4

six months, a health care provider would decide whether Kosterow
is stable enough to work, and whether other restrictions could
be modified.  See Doc. No. 8, at 56.  Kosterow's grievance of
that issue was denied by Superintendent Dionne.  See id.

Kosterow asserts that he has not received adequate medical
care and meals while in HCDOC custody.  He asserts that he has
had ear pain, hearing loss, and an umbilical hernia which he
states has become enlarged and has caused his bowel movements to
be painful.  He alleges he has not received prompt, proper care
for those conditions.  An inmate grievance filed by Kosterow on
July 3, 2017 complains about those issues.  See Doc. No. 8, at
39.  The July 10, 2017 response to that grievance prepared by
HSA Denise Hartley states that Kosterow was seen by a provider
on May 19 and June 20, 2017, and that Kosterow had not submitted
a sick slip since June 19, 2017.  See id.  Hartley further notes
that the provider diagnosed a chronic hernia and allergic
rhinitis, for which the provider prescribed Claritin and
Flonase.  See id.  Superintendent Dionne denied the grievance
complaining about inadequate medical care for those conditions.
See id.

Kosterow asserts that his self-diagnosed condition of "low
blood iron," which he attributes to his vegan diet, has not been
properly treated, and that HCDOC providers have neither
prescribed multivitamins with iron nor ordered that he receive a

5

long sleeve shirt to alleviate his feeling of being cold, which

he attributes to iron deficiency.  He further alleges that the

meals he is served have averaged less than 2000 calories per

day, that food items scheduled for service to him are frequently

missing from his tray, that his vegan meal choices are limited,

that he is losing weight, and that hot food has been served cold

to him on trays that are not clean.

### Claims and Requested Relief

Seeking compensatory and punitive damages and injunctive

relief, Kosterow asserts the following claims:

1.    Kosterow's Fourteenth Amendment right to avoid
punitive conditions of pretrial confinement has been
violated, with respect to the medical care he has received
while in pretrial detention at the HCDOC, in that:

a.    Providers identified in the Complaint as "Unknown
Nurse #1," "Unknown Nurse #2," and "Unknown Medical
Provider #1" have not properly diagnosed or treated
Kosterow's ear pain and hearing loss, which began in
April/May 2017;

b.    Providers identified in the Complaint as "Unknown
Nurse #1," "Unknown Nurse #2," and "Unknown Medical
Provider #1" have not treated Kosterow's umbilical
hernia, beginning in April/May 2017, which has become
enlarged and painful as a result;

c.    HSA Denise Hartley and the HCDOC Superintendent
David Dionne are liable in their supervisory
capacities for the conduct of nurses and medical
providers, relating to Kosterow's ear pain, hearing
loss, and an umbilical hernia; and

d.    HCDOC nurses and medical providers have not
properly treated Kosterow's self-diagnosed "low blood

iron" that he relates to his vegan diet, or his complaints of feeling cold, beginning in May/June 2017.

2.   Unnamed defendants violated Kosterow's Fourteenth Amendment right to avoid punitive conditions of pretrial detention, in that Kosterow has received vegan meals that have not provided him with the calories he needs to maintain his weight.

3.   Unnamed defendants have violated Kosterow's Fourteenth Amendment right to avoid punitive conditions of pretrial confinement, as Kosterow has received cold meals, with a limited array of vegetables and fruits, with missing items, which were served on trays that had not been properly washed.

4.   Kosterow's First Amendment right to the free exercise of his religion has been violated, rendering defendants liable under 42 U.S.C. § 1983, in that:

   a.   Capt. Levierge denied Kosterow access to a religious diet of vegan meals from May 9, 2017 until to May 20, 2017;

   b.   Steve Goldman, Capt. W. Scurry, and Superintendent David Dionne restricted Kosterow's access to a religious text, the Pavitra Bible;

   c.   Capt. Scurry and HCDOC Superintendent Dionne have denied Kosterow access to a yoga mat; and

   d.   Capt. Scurry, HCDOC Superintendent Dionne, and HSA Hartley have taken actions in their supervisory capacities that prevented Kosterow from practicing yoga and/or substantially burdened Kosterow's religious practice of yoga.

5.   Kosterow's rights under RLUIPA have been violated, in that:

   a.   Capt. Levierge denied Kosterow access to a religious diet of vegan meals from May 9, 2017 until May 20, 2017;

   b.   Steve Goldman, Capt. Scurry, and Superintendent Dionne restricted Kosterow's access to a religious

text, the Pavitra Bible;

c.    Capt. Scurry and HCDOC Superintendent Dionne have denied Kosterow access to a yoga mat; and

d.    Capt. Scurry, HCDOC Superintendent Dionne, and HSA Hartley have taken actions in their supervisory capacities that prevented Kosterow from practicing yoga and/or substantially burdened Kosterow's religious practice of yoga.

6.    Kosterow's Fourteenth Amendment right to equal protection has been violated, rendering defendants liable under 42 U.S.C. § 1983, in that:

a.    Kosterow has not received a religious text and a yoga mat, while inmates of other religions have received Christian Bibles, the Qur'an, and a prayer rug; and

b.    HSA Denise Hartley and Superintendent Dionne limited Kosterow's ability to exercise and work at the HCDOC, or have taken actions in their supervisory capacities, because of Kosterow's seizure disorder, while other inmates without seizure disorders have not been subjected to the same restrictions.

7.    Kosterow's rights under Title II of the ADA were violated at the HCDOC, in that Kosterow's ability to exercise and work was limited because of his seizure disorder, while other inmates without seizure disorders were not subject to the same restrictions.

8.    Unnamed defendants have violated Kosterow's Fourteenth Amendment right to due process, and are liable under 42 U.S.C. § 1983, in that defendants restricted Kosterow's access to the grievance process at the HCDOC.


## Discussion

### I.    Section 1983 Conditions of Confinement & Medical Care

#### A.    Fourteenth Amendment Standard

Kosterow's claims concerning the conditions of his pretrial

confinement arise under the Fourteenth Amendment Due Process
Clause, which prohibits conditions of confinement that amount to
pretrial punishment.  See Bell v. Wolfish, 441 U.S. 520, 535
(1979).  A pretrial detainee's liberty interest in non-punitive
conditions of confinement is "coextensive with those of the
Eighth Amendment's prohibition against cruel and unusual
punishment."  Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir.
2005).  Conditions may be punitive if they deny the inmate the
"minimal measure of necessities required for civilized living."
Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To satisfy the criterion that the conditions at issue
comprise the minimal measure of civilized living's necessities,
an inmate's constitutional claim regarding inadequate medical
care requires a showing of a "serious medical need."  Miranda-
Rivera v. Toledo-Davila, 813 F.3d 64, 74 (1st Cir. 2016).  A
serious medical need is "one that has been diagnosed by a
physician as mandating treatment, or one that is so obvious that
even a lay person would easily recognize the necessity for a
doctor's attention."  Id.

A plaintiff asserting conditions of confinement claims must
also allege facts regarding the defendant's state of mind.
Courts have cited the standard applied in cases filed by
prisoners asserting a violation of the Eighth Amendment, in
considering whether the pretrial detainees' claims may proceed,

9

reasoning that the Fourteenth Amendment's prohibition against punitive pretrial conditions is at least as protective of detainee rights as the Eighth Amendment's Cruel and Unusual Punishment Clause is, as to convicted inmates.  See generally Ruiz–Rosa v. Rullan, 485 F.3d 150, 155-56 (1st Cir. 2007). Inmate medical care claims "must involve acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," shown by "the denial of needed care as punishment," or by defendant's subjective awareness of "facts from which the inference could be drawn that a substantial risk of serious harm exists," and a showing that defendant actually "dr[e]w the inference."  Id. (internal citations and quotation marks omitted).[4]  "'[L]iability for negligently inflicted harm is

---

[4]Given the absence of controlling law regarding the impact of Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), on claims regarding the conditions of pretrial detention, this court declines to determine, without full briefing, whether Kingsley alters the "deliberate indifference" mens rea standard that applies to such claims.  See Darnell v. Pineiro, 849 F.3d 17, 36 (2d Cir. 2017) (consistency with Kingsley "dictates that deliberate indifference be measured objectively" in due process cases filed by detainees); Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc) (applying Kingsley's holding to failure-to-protect claims brought by pretrial detainees against individual defendants under the Fourteenth Amendment), cert. denied, 137 S. Ct. 831 (2017); McKenney v. Joyce, No. 2:16-CV-412-NT, 2016 WL 6304678, at *4 n.4, 2016 U.S. Dist. LEXIS 148759, at *11 n.4 (D. Me. Oct. 27, 2016) (Nivison, Mag. J.) (Report and Recommendation) ("where the conduct in question is 'purposefully or knowingly' applied, satisfaction of an objective standard is sufficient to establish liability" (citing Kingsley, 135 S. Ct. at 2472)).

categorically beneath the threshold of constitutional due process.'"  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (citation omitted) (emphasis in original).

B.   Municipal and Supervisory Liability

A county or other municipality may not be held liable under 42 U.S.C. § 1983 for violating plaintiff's federal constitutional rights under a theory of respondent superior. See Iqbal, 556 U.S. at 677.  A plaintiff who brings a section 1983 action against a municipality "must identify a municipal policy or custom that caused the plaintiff's injury."  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citations and internal quotation marks omitted).

Supervisory liability under 42 U.S.C. § 1983 lies only where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation."  Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotation marks and citation omitted).

> A plaintiff can establish that "affirmative link" by alleging that the supervisor was "a primary violator or direct participant in the rights-violating incident," or that "a responsible official supervises, trains or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015) (citations omitted).

C.    Ear Pain/Hearing and Hernia (Claims 1(a), 1(b), 1(c))

Plaintiff's allegations regarding persistent ear pain and hearing loss, painful bowel movements, and an untreated, enlarged umbilical hernia warrant service of his Fourteenth Amendment claims relating to those matters. Accordingly, in the Order issued this date, the court directs service of Claim 1(a) and 1(b) on the unnamed health care providers specified in those claims, and service of Claim 1(c) on the supervisors listed in Claim 1(c), all in their individual capacities. To the extent plaintiff seeks damages and injunctive relief for continuing, untreated medical needs, Claim 1(c) is also served upon Hillsborough County.

D.    Food/Medical Care Claims (Claims 1(d), 2, 3)

Plaintiff's remaining allegations regarding the conditions of his confinement, including allegations about feeling cold, the lack of prescriptions for vitamins with iron and a long sleeve shirt to address his self-diagnosed "low blood iron," the monotony and cold temperature of meals served to him, missing food items and low calorie counts, and the condition of his food trays, fail to state any constitutional claim upon which relief can be granted. Plaintiff has not alleged facts to show that his complaints of feeling cold and having "low blood iron" relate to any "serious medical need," either diagnosed by a

12

health care provider, or so obvious that a lay person would recognize it.  In addition, nothing in the Complaint suggests that Kosterow has been diagnosed as requiring a certain number of calories per day, which he is not receiving, and nothing suggests that Kosterow's unspecified rate of weight loss manifests a serious medical need.  Furthermore, Kosterow has not alleged facts showing that the minimal measure of civilized life's necessities require that he have access to higher amounts of food, a long sleeve shirt, or iron supplements, under the circumstances described.  And nothing in the Complaint suggests that the condition of plaintiff's food trays or the absence of items of food from his trays manifests any conduct that is purposeful or knowing, or otherwise not merely negligent. Accordingly, the district judge should dismiss the remaining medical care and conditions of confinement claims, identified above as Claims 1(d), 2, and 3.

## II.  **Religious Freedom**

### A.    First Amendment Free Exercise Standard

The First Amendment Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of

religion.'"  Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008).  Facilities may adopt restrictions that impinge inmates' constitutional rights if those restrictions are reasonably related to legitimate government objectives.  Bell v. Wolfish, 441 U.S. 520, 538-40 & n.20 (1979); see also Turner v. Safley, 482 U.S. 78, 89 (1987).  Courts evaluating the policies of a jail or prison must do so with due deference to the professional expertise and judgment of corrections officials as to issues of institutional safety, security, and order.  See Pell v. Procunier, 417 U.S. 817, 827 (1974).

B.    RLUIPA Standard

RLUIPA "bars prisons . . . from substantially burdening an inmate's religious exercise unless the regulation under attack is the least restrictive way to advance a compelling state interest."  Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011) (citing Cutter, 544 U.S. at 715-16).  Under RLUIPA, the "plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government."  LeBaron v. Spencer, 527 F. App'x 25, 28 (1st Cir. 2013) (internal quotation marks and citation omitted).  "RLUIPA defines the term 'religious exercise' very broadly, and the term includes 'any exercise of religion, whether or not compelled by, or central

14

to, a system of religious belief.'" Id. (citation omitted).

While the First Circuit has not yet decided the issue, this

court agrees with the reasoning of those courts that have

decided that RLUIPA does not authorize claims for damages

against defendants in their individual capacities.  See Staples

v. N.H. State Prison, No. 16-cv-033-PB, 2017 DNH 023, 2017 WL

519189, at *2, 2017 U.S. Dist. LEXIS 17895, at *7 (D.N.H. Feb.

8, 2017).

     C.   Diet and Yoga (Claims 4(a), 4(d), 5(a), 5(d))

Kosterow's allegations that he was forced to choose between

abandoning his religiously-prescribed vegan diet or not eating

at all (Claims 4(a), 5(a)), warrant service of those claims.

Claim 4(a) for damages under the First Amendment is served in

the Order issued this date, against Hillsborough County and

Capt. Levierge in his individual capacity, for failing to ensure

that Kosterow received vegan food upon receiving notice of

Kosterow's religious dietary requirements on May 9, 2017.  In

addition, Claim 5(a) asserting a claim for damages under RLUIPA

for that period of time is served upon Hillsborough County.

Similarly, plaintiff's claims that for a period of time he

was not permitted to practice yoga or was substantially burdened

in his ability to do so (Claims 4(d), 5(d)) are sufficiently

stated to allow them to proceed.  Claim 4(d), a First Amendment

claim for damages, is served upon Hillsborough County, and upon

15

Capt. Scurry, HCDOC Superintendent Dionne, and HSA Hartley in their individual capacities.  Claim 5(d), a RLUIPA claim for damages, is served upon Hillsborough County.

D.   Yoga Mat and Text (Claims 4(b), 4(c), 5(b), 5(c))

Nothing before the court suggests that Kosterow is substantially limited in his ability to practice his religion by the lack of a Pavitra Bible, which sources suggest is a Hindi transliteration of the Christian Bible, which Kosterow acknowledges is freely available at the HCDOC,[5] and nothing before the court suggests that Kosterow is substantially limited in his ability to practice his religion by the lack of a yoga mat.  Accordingly, Kosterow has failed to state a claim for relief under either the First Amendment or RLUIPA concerning the denial of a yoga mat or a Pavitra Bible, and the district judge should dismiss Claims 4(b), 4(c), 5(b), and 5(c).

## III. Equal Protection

A.   Standard

"'The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government.'"  Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (citation omitted).  "To establish an equal

---

[5]See, e.g., WordProject, *Pavitra Baaibil – Hindi Transliterated Bible*, https://www.wordproject.org/bibles/in_tr/index.htm (last accessed Dec. 27, 2017).

protection claim, a plaintiff needs to allege facts showing that
'(1) the [plaintiff], compared with others similarly situated,
was selectively treated; and (2) that such selective treatment
was based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith intent to
injure [the plaintiff].'"   Id. at 132-33 (citation omitted).

B.   Religious Discrimination (Claim 6(a))

Plaintiff asserts that Christian inmates receive free
Christian Bibles, and Muslim inmates receive Qur'ans and prayer
rugs, while he has not received a yoga mat or the Pavitra Bible.
The record indicates that Christian Bibles, Qu'rans, and prayer
rugs were donated to the HCDOC for distribution to inmates, but
that no Pavitra Bible or yoga mat has been donated to the HCDOC
for distribution to any inmate.  Plaintiff has failed to show
that he is similarly situated to inmates who received those
items, insofar as he has not shown that any donated religious
item or text was denied to him, but provided to inmates of a
different religion.  Accordingly, plaintiff has failed to
demonstrate that he was subjected to religious discrimination,
and the district judge should dismiss Claim 6(a) for failure to
state a claim upon which relief can be granted.

C.   Discrimination Based on Seizure Disorder (Claim 6(b))

Plaintiff asserts that HCDOC inmates without seizure

disorders are not limited in their ability to work or exercise
at the HCDOC, while those with seizure disorders are so limited.
The class of inmates with seizure disorders is not a protected
class.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S.
432, 446 (1985).  "In order to state a claim for [disability]
discrimination that violates equal protection, [plaintiff] must
allege that he was intentionally treated differently from others
similarly situated and there was no rational basis for the
difference in treatment."  Toledo v. Sanchez, 454 F.3d 24, 34
(1st Cir. 2006).

     The Complaint includes a statement of HSA Hartley
indicating that inmates with seizure disorders are initially
restricted in their ability to work or exercise at the HCDOC to
protect their health and safety.  See Doc. No. 8, at 56.
Hartley's statement further indicates that health care providers
would revisit whether to modify the restrictions affecting
Kosterow after he is seizure free for at least six months.  See
id.  While an interest in reducing inmate exposure to excess
health and safety risks could be a rational ground for treating
inmates with health conditions differently, it is plausibly
alleged that the restrictions as applied to Kosterow were
discriminatory and irrational.  The allegations in the Complaint
at this preliminary stage of the case warrant service of Claim
6(b).  Accordingly, in the Order issued this date, service of

18

that claim is directed upon the supervisory defendants in their individual capacities, and upon Hillsborough County.

## IV.   ADA Title II (Claim 7)

Construed liberally, the Complaint asserts a Title II ADA claim of disability discrimination, in alleging that HCDOC officials and medical providers restricted Kosterow's ability to have a job and exercise at the HCDOC because of his seizure disorder.  In the absence of controlling law, this court follows those cases that have determined that individual liability under the ADA is not available.  See Tveter v. Derry Coop. Sch. Dist. SAU # 10, No. 16-CV-329-PB, 2017 WL 2062944, at *12, 2017 WL 2062944, at *5 (D.N.H. Apr. 25, 2017), R&R adopted, No. 16-CV-329-PB, 2017 WL 2062855, 2017 U.S. Dist. LEXIS 72671 (D.N.H. May 12, 2017).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To establish a violation of Title II, a plaintiff "must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such

19

exclusion, denial of benefits, or discrimination was by reason of his disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (internal quotation marks and citation omitted).  The facts alleged, regarding the HCDOC's policy of limiting Kosterow's eligibility for work or exercise because of his seizure disorder, warrant service of the Title II disability discrimination claim upon Hillsborough County.

## V.   Interference with Grievances (Claim 8)

Kosterow asserts a violation of his right to due process, alleging that HCDOC guards, on multiple occasions, interfered with his access to the grievance process.  To state a due process claim, a plaintiff must assert facts showing that he has suffered a deprivation of a protected interest in life, liberty, or property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (procedural due process); Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (executive action does "not infringe substantive due process unless it also deprives an individual of a 'protected interest in life, liberty, or property'" (citation omitted)).

There is no constitutional right or protected liberty interest in having access to a grievance process or to receive any particular response to grievances.  Leavitt v. Allen, 46 F.3d 1114, 1995 U.S. App. LEXIS 2191 at *6, 1995 WL 44530 at *2 (1st Cir. 1995) (unpublished table decision) ("prison

20

regulations which establish a grievance procedure cannot give rise to a liberty interest because they confer only procedural protections, not substantive rights, upon the inmates who may use the grievance procedures"). "[D]efendants' alleged obstruction or misapplication of [grievance] procedures is not independently actionable." Freeman v. Dep't of Corr., 447 F. App'x 385, 387 (3d Cir. 2011). Accordingly, the district judge should dismiss Claim 8 for failure to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons, the district judge should dismiss Claims 1(d), 2, 3, 4(b), 4(c), 5(b), 5(c), 6(a), and 8. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

January 5, 2018

cc: Scott Shawn Kosterow, pro se